Thank you, Your Honor. May it please the Court. My name is Chris Belmore, and I represent Adam Poitra. We're asking the Court to reverse and remand for new trial based on four errors. First, the District Court plainly erred in failing to instruct the jury that it must unanimously agree on the precise, specific act to convict. Trial involved one count, aggravated sexual abuse. At trial, the government argued several discrete acts to support that Was there an objection to the lack of a unanimity instruction? There was not, Your Honor. This is subject to plain error analysis. And as far as the error is concerned, the error involves two parts. First, that is, aggravated sexual abuse is a separate act offense under the 2L decision. And second, that a separate act offense requires reasonable certainty to jury unanimity on that separate act under the Keeps Evil decision. The first part is pretty straightforward. This Court in 2L determined that aggravated sexual abuse is a separate act offense. While 2L concerned a double jeopardy question, it doesn't really have any bearing on a unanimity question. The double jeopardy question in 2L dealt with two separate sexual acts. Was that one crime or was that, could that be charged as two? The Court held that that could be charged as two separate offenses as opposed to two acts supporting one count. I think, you know, I think you'd make a really good argument if we weren't in plain error land. And in particular, it seems to me that the, I'm going to mispronounce this, De Marse, De Marse opinion, a district court judge who, without objection, so sua governing law, they might look at the, the judge might look at De Marse and say, you know what, that gives me the go-ahead for not having a specific unanimity instruction, so that's exactly what I'm going to do. Why is that incorrect? Yes, Your Honor, because we are looking for error, but error that is plain. Right. And there is, there is some complications with De Marse. De Marse involved one incident. It involved, it involved an attempted sexual abuse in its truest form. The defendant there had tried unsuccessfully to sexually abuse the victim based on pulling down the victim's pants and underwear one time right after the other. Eventually, the, the victim was able to stave off before there was any sexual contact made and the defendant relented. And so, why those facts matter is the question came down to whether or not the attempted act, whether or not the jury had to all agree on what the attempted sexual act was. While in De Marse, there was no sexual act. It just never happened. That was the facts of the case. And the, and this court concluded that, well, it didn't, it didn't really, it didn't really matter whether or not they agreed that there was going to be some sort of penile vaginal intercourse or some sort of touching, which would reflect to the sexual act. It was, that was different than this case, where it's not one isolated incident, it's many. And I tried to come up with a number, Your Honors, and I don't have one. There's just so many that was, that were discussed. There are multiple acts, but I just wonder whether the district court, when we're talking about clear, obvious error in the, in the absence of an objection, I just wonder whether the district court has to do the kind of look you're suggesting to go to the, to, to dig deep into the facts, to whether they could just take, the district court could just take the language of that case at face value. Correct. And I understand that. And in this case as well, it's true that the indictment does contain attempt language. I think the statute contains that as well. An attempt suffices under the statute, under 2241C, to sustain a conviction. But again, it was the question there, the, the, the error alleged in DeMars was whether or not they, everyone has to agree, the jurors that is, has to agree on what precise sexual act was attempted. Counsel, do you have to show the jury was really confused, not just confused a little bit, but really confused? Is that what you're trying to argue? No, Your Honor. Oh, I thought that would, would be on a plain error standard. What do you think it is? Well, following, following Keefe Siegel, I guess, that the, the way this court analyzed that was pretty succinct, that it was, met the, the third and fourth prongs of plain error, that there, that there was confusion here. In this case, based on, you know, asking a question, what act did Mr. Poitra do to be convicted of this whole count in the indictment? And the answer to that question is unknowable. So with that, there is no reasonable probability that the jurors all agreed on one specific act, which is what the law required, and therefore there is confusion sufficient to reverse. And that mirrors, or parallels, what you should say. That sounds to me like a structural error argument. Right? You're getting awful close to structural error with the way you're arguing this case. And that, this is not structural error, right? This, this issue of instructions? Tell me if you think it is and give me a case. Then the Supreme Court's list of, you know what I mean by structural error, you don't have to show any prejudice, you don't have to show anything, you just show a great big error. Well, I, I think that the, the specific error here under, under Rule 52 on plain error standard, we are, we're asking because it's so structurally similar in, in the legal issues to Keefe Eagle, where this Court found that this risk, that the jurors did not all agree on what specific act required reversal. And that's no different than the Keefe Eagle decision, which was a plain error. And, and those are, those are, the analysis in our, our argument is, is, is the same. And there wasn't an extensive discussion in Keefe Eagle regarding what level of prejudice or what harm to the judicial, excuse me, the reputation to the judicial proceedings. It was just found. And, and of course, the Keefe Eagle decision relied heavily on a South Dakota State Supreme Court case because Keefe Eagle was analyzing a South Dakota State statute that simulated child abuse. And so turning to South Dakota law, this Court relied on state versus white face. And in that decision, the South Dakota Supreme Court found that the district court has a duty, su sponte, to provide a specific instruction under these circumstances. And that language was quoted in Keefe Eagle. And again, that is what we're arguing here today is, in this case, for Mr. Poitras' case, that the, that it was the district court had a duty. Prejudice was much more obvious there than, than here in the Keefe Eagle case. I don't know if I agree with that. The Keefe Eagle case involved multiple counts, but the issue involved one count. And that involved whether or not, or the jury all agreed upon one of three types of assaults. I think that's very similar to this case where, yes, we only have one count and one count was charged. But dealing within that issue, what the evidence was was that there were multiple discrete instances or acts. And again, that, that is very similar to, to Keefe Eagle. This case, this, this case deals more with credibility and whether the jury believed the witnesses, then it's, it's just not, not the same situation as Keefe Eagle. Well, I think there were some credibility concerns that were discussed in the Keefe Eagle decision. But yes, I would agree that this trial, as it was, as the case was tried, all boiled down to the victim's credibility. It was, certainly there was no physical evidence corroborating any claims and there was no other eyewitnesses. It all came down to, to what the, what the victim testified to and the defense spent most of the, its case questioning that credibility. But again, it all comes down to what did the jury decide and, and what precise act did they all agree upon for Mr. Poitra to be found guilty? And I think it's easy to see that there's a very good chance that those jurors did not all agree on, on what act. There were so many and there were moments in time, too. There was acts that were alleged to have occurred in the bathroom and, and... Well, again, we were relying on the Keefe Eagle decision, which was, which was plain error. Now, I understand that Keefe Eagle had white face to rely on to, to make, make the error plain. Here, though, this circuit has, you know, discussed this issue of jury unanimity before. And I would take the time now to, to point out that it's not, I don't believe the case cited in the briefs, United States v. Karam. So the issue and the caution... Can you give a 28-J letter to us? Yes, Your Honor. Okay. Proceed. Please. In the, in the issue, what there is that the, the court was on notice through that decision that there is a risk of a lack of unanimity under certain circumstances. And here, because this was a separate acts offense, that instruction was required, as noted in, in Keefe Eagle and white face as well, that that was a duty the district court had to instruct the jury. And that is our position as to why this case should survive plain error or, excuse me, be reversed under a plain error theory, because of the, the Keefe Eagle decision and the affirmative duty under these juror unanimity cases. Could you address, before your time runs out, closing arguments? The unanimity instruction was a concern of mine, but closing arguments and the, and the statements that were made in closing are a big concern as well. Yes. That was the fourth issue that we had addressed in, in the brief. What had happened, and this is primarily during the government's rebuttal argument. After hearing what the defense argument was, the government decided to come up with its own iteration of that defense, which basically concocted some conspiracy theory that the witness as well as the victim had to come up with in order for Mr. Poitra to have not committed these sexual abuse acts or for the victim to have made up these allegations, which was simply not true under the law. Certainly the government had to prove the case beyond a reasonable doubt. The lack of that is enough to acquit. And this is in closing, right? I mean, or did it happen earlier in the trial? These statements that were made? Rebuttal. Rebuttal, okay. So, so after Mr. Poitra's counsel was done with his closing argument and had no opportunity beyond that. So rebuttal in closing, got it. Right. Which I, I believe makes this more egregious and, and warrants reversal on that ground as well. So the, the, the brief states of the government set up some strawman conspiracy theory that in order for Mr. Poitra to be found not guilty, this conspiracy had to have existed, which is, which is simply not the case. The jury just could not, one way the jury could have found Mr. Poitra not guilty is they didn't believe the victim. They didn't have to have 10, 10 steps of overt acts as a part of some conspiracy to make up this allegation. But that's what the government did. That's how they characterized it and essentially said, with that, you have to believe that's true for Mr. Poitra to be found not guilty. And then at the same time saying, which story is more believable, they cite to Occam's razor. Our, ours, the government's theory of this case is a much more simpler one. So pick the one that makes the most sense, which distorts the, the burden of proof here. And, and then also the standard of proof as it likens a, to a preponderance standard and both of those were improper and, and, and reversible. Well, and the, the language that was used was pretty colorful. I think it talked about the usual suspects and Kaiser-Sosay, and then it talked about a conspiracy theory suitable for a cheesy drama. And there were some other, then there was the Occam's razor. So there's a lot of colorful language going along with that as well. Right. And we, and that's our position that that distorted the burden of proof, but also the standard of proof that it was the government's burden to prove it beyond a reasonable doubt, not for the jury simply to pick which side it found more credible. If there's no other questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you, Mr. Billmore. Mr. Solomon. Good morning, Your Honors. Clayton Solomon for the United States. May it please the Court. This was a straightforward case. The indictment charged one federal crime involving one victim committed by one defendant, and the theory put forth by both the government and the defense that this case was all or nothing. So either the abuse happened, as the government alleged in the indictment, or, as the appellant maintains, the entire story was made up in just 36 hours before a custody proceeding. The first time we hear about these individual acts is on appeal. The victim, KP, testified in this case. She was cross-examined, and not a single question in her cross-examination addressed events that happened from the day she alleges her abuse occurred until the date ends on her twelfth, until her twelfth birthday. Not once in the defendant's closing arguments did they ever address a single act of abuse. This case was framed as all or nothing. It's how it was tried. The jury was instructed with the Court's general unanimity instructions to find unanimity, and that's what they did. So is that a substantial rights argument you're making? Because, I mean, presumably there were multiple acts underlying the course of the abuse. Your Honor, we did. The indictment alleges that on or before September 1, 2017, through her twelfth birthday. And so we charged this case as a case involving continual abuse, as obviously as happens often in cases involving child sexual abuse. And so the evidence presented at trial did involve multiple instances of abuse over that, like, nearly seven-month period. And so what we presented to the jury was a continuing pattern of abuse, and the jury, nonetheless, was instructed generally to find unanimity. But I think the concern of these cases is if there's multiple alleged acts of abuse, then juror number one could say, well, it was that act on such-and-such date, and juror number two could say it's, well, that act on that other date. And you see what I'm saying? And so it seems to me that if we were to take those cases seriously, that even if you didn't emphasize it, it's probably erroneous. It's certainly a concern, but there are a lot of protections in place for that. So the first time that concern is addressed is with the indictment. You can challenge the indictment as duplicitous. So that wasn't raised here. The second lead to that is once you're at trial, if you have, as we do, an indictment that alleges between a time period, once you're at trial, if the actual evidence that comes in establishes discrete acts and the Court's decisions, it keeps legal talks about discrete acts, if the evidence before the jury presents discrete acts, presents the more than just a possibility of jury confusion or jury division, then you can ask for a single act unanimity instruction. That wasn't done here. So is it a concern? Yes, it is. Are there protections in place? There are. The problem in this case, of course, was a specific act unanimity instruction wasn't requested, and so here we are on plain error review, and we have to look at the decisions from this Court and say, well, was it right what the Court did? And so I think there are probably two decisions we look at, keeps legal, and I'll address that, obviously, and right. Right was a duplicity case, but importantly, right involved, just like this case, continuing patterns of abuse over the course of a period. That involved multiple victims. The evidence presented in that case established 26 to 56 individual incidents of abuse. And so the appellant, what they argued in that case was, look, they've constructively amended the indictment in a way that makes it duplicitous. And the Court said, no, that's acceptable, provided that the evidence presented to the jury matches the indictment. And that's what we have here. So keeps legal, of course, very different case. So we think keeps legal is distinguishable on two main reasons. One is the law that it was applying, the South Dakota statute, in the face of whiteface, the South Dakota decision a decade earlier. But more importantly is the facts, because the analysis, I think counsel here said reasonable certainty, that's not the standard. So the standard under keeps legal, you have two possible cases. You have a case where there's two discrete crimes and the jury can't agree. And then you have cases where the evidence merely presents the possibility the jury may divide or be uncertain. In that second case, you don't have error. And so what you need is something more than a possibility. And I think Your Honor asked about reasonably confused. You need something more than a possibility. You need something more than uncertainty. And what we have to do is look at the record and see if there was plain error here. The record in this case is the victim herself testified. She was the only witness to her abuse and there were no conflicting accounts of that abuse. Her testimony was that she was abused repeatedly over the course of months. And everything that she described from penetration in the bathroom, in the bedroom, over the course of seven months, every single one of those acts is a crime. So keeps legal. And Judge Smith, you hear a lot of cases, but if you recall, the appellant in that case came to the court and said, well, there's a problem here because you have in one single count, you have three different witnesses, none of whom were the victim. You have three witnesses testifying to three different events. Punching the victim in the face in the basement, punching the victim in the face on the porch, and then one was punching the victim in the stomach. So three distinct events, three witnesses, never mind that all those witnesses had very serious credibility problems. And the argument made before this Court was you have discrete acts and not all of those would amount to a crime under the South Dakota statute. So the South Dakota statute has a reasonable force defense, it's a child abuse statute. Here under 2241, it happened or it didn't. If it involves touching or it didn't. There's no dispute on this record that even if you accept that there were discrete acts, and that's not on the record, but even if you do, every single one of those was a crime. It's the likelihood of jury division in this case is non-existent. I also want to point, I mentioned the Wright decision, so 26-56. We also talked about DeMars. DeMars is a little different because DeMars involved one event but two different means of committing the event. So we think that's probably on point for authority, but if you combine that with Wright that says, yes, it's not just the individual events, but it can also be the individual instances of abuse, we think that you don't find plain error in this case. I do want to make just two quick points on, while we're on the jury instructions, on Factor 4, which I don't think was addressed, and whether it seriously affects the fairness, integrity, or reputation of the proceedings. Number one, as we've addressed, this is a case where not all of the discrete acts, even if we accept they existed, were crimes. And so, excuse me, this was a case where all were crimes, even if it was established. We think that's a super important factor in Number 4. And then there's a broader point, and I think this goes to this element and maybe the others, is the nature of this crime. So this and other courts recognize that in child sex abuse cases, where we have grooming, as we saw here, it's a crime that takes place over time and involves repeated abuse. So the more frequent the abuse occurs over a longer period of time, the more likely it is the child's memory will be imperfect about the event. So we recognize there is a challenge in these cases of assuring unanimity. And when a trial court is faced with looking at a record in a particular case, and whether, if one's instructed, it's asked to do that, but whether on its own it has to do that, there's going to be some line drawing. And I think our bottom line point is that this isn't the case where, in the name of fairness and the reputation of the courts, the line should be drawn on the side of finding a plain error. With the time I have, I do want to address the hearsay question, and then I will address really quickly the point about the closing or the rebuttal arguments. Hearsay, I just want to put, number one, some facts in the record, and then clarify some things in our brief. Our view is that whether or not the court erred, the evidence in this case was clearly cumulative, but I do want to address those things. Number one, I will give the court some dates, because I don't think that they're set out in our brief. There are four relevant dates here. October 9, 2018 is the day the defendant filed for divorce, the mother on November 2014, the victim, KP, went to the police on November 18, and a custody hearing was held, or was to be held, on November 20. And so the argument made in tome here is that the victim's motivation to fabricate her story arose prior to the date of the alleged prior consistent statements, the hearsay statements from TH and the mother. And so the dates here are important. And we didn't address this properly in our brief, but I want to make it clear for the court. There is only one date supportable in the record when she may have had a motivation to fabricate, and that is on November 18, 2018. She was asked on cross-examination whether she knew about the custody hearing or whether she knew about the divorce, and what she said was that the day she told her mother, on November 18, there was a custody issue lingering in the background. So it's not just enough to say that she was motivated from the beginning. Our position is if you look at the record, there was only one date when she even knew that there was even a divorce, and that's November 18, and you have her testifying that TH, her friend, she first told TH about the abuse two weeks before that. And so that puts us before the day she told her mother, before the day she went to the police, and before the day her mother filed for divorce. So on time, we don't think it precludes TH's testimony, a very important point we wanted to clarify. We, of course, have made the arguments in our brief that they nonetheless come in as non-hearsay. If the Court doesn't have questions on that, I'll move on to the final point about rebuttal. Rebuttal. So this was, of course, the very last thing at trial, and we know that these are done on the fly. The entire rebuttal here amounts to about 12 pages of the transcript after a multi-day trial, and I want to put in context what my trial counsel said about the testimony. The defense in this case was that the motive of this young woman to come forward with her abuse happened in 36 hours, and they drew a timeline that started from the divorce, from telling her friend, to telling her mother, to telling the forensic interviewer, to later that with the custody proceedings. So what we sought to do in rebuttal was to address each link in the chain, and so to the extent there was a discussion of relative believability, I want to be clear, this jury was instructed. It was told in opening statements, it was told in my closing, and it was again told in rebuttal that they needed to find beyond a reasonable doubt. But it is true that in the course of discussing the sequences of events, we wanted to address the question of whether this theory can give rise to a reasonable doubt, and that's what we did. Why compare her, though, to Mrs. Samantha? Why compare her to that mythical, or I think it was mythical, villain in the usual suspects? Which reads to me a lot like saying, you know, she's a conspirator, a bad person, and therefore, you know, I don't know. Yeah. It's a good question. I was sitting at a council table, and I hadn't seen the usual suspects. Yeah. Yeah. And so I didn't even know the reference. This case, from the perspective of the defense, was a case about a villain. It was a case about the mother. And the theory was that when she received a divorce complaint in tribal court, she was worried that she would lose custody of her daughter, her daughters, and so she put this victim, KP, up to the whole thing. And this case, from the closing through the cross-examination and opening, was about a divorce. I think they described it as a love story. So the defense wanted to make this case about the mother and not about the victim in this case. So it was important to understand, this is a mother who, by the way, didn't even really know what happened until trial. You know, her daughter told her a little bit about what happened. But this is someone who did, you know, the right thing. She went to the police. She said, you know, we need to report this. So it was important for us to point out, who is the villain in this theory of the case? This is the mother of a victim, and it was important for us to humanize her. Could we have chosen a different analogy, perhaps? Was that, you know, error when the very last thing we say, the very last page of the rebuttal is reminding the jury that they need to return a unanimous verdict? As soon as that's over, the very next page is the Court reading the instructions, and the first instruction — actually, I don't think it's the first. It's the third — says, arguments of counsel are not evidence. And then right after that, they remind, again, of the burden of the parties. It was never in dispute. Well, and then you do have another issue, I think, which is, by calling it a conspiracy theory, like worthy of a cheesy drama, you do arguably belittle the defense. Or not you, but whoever said that. Arguably belittle the defense. I will say we because we were a team, so it was us. It certainly was not our intention. But we prosecuted what we believed was a very serious crime involving seven months of sexual abuse against an 11-year-old woman. And the only thing that came out as, you know, in support of this theory was a notebook from when the mother was in high school and the date of a custody hearing. And so we thought it was very important to tell the jury that this is incredible. This is difficult to believe when you are instructed that you must find beyond a reasonable doubt and you have to ask what does reasonable mean. You have to apply your common sense to this. And so that's why it was said. Again, we probably could have chosen different words, having spoken to my trial counsel. I'm sure he would have. But do we think that amounts to reversible error in this case? We don't, Your Honor. Thank you, Mr. Solomon. Thank you. Mr. Belmore, we'll finish out your minute, give you an opportunity to answer any questions you might have. Thank you, Your Honor. Thank you, Your Honor. Picking up with the fourth issue, the improper comments, I will point out, too, and it's in the brief, that this Court has reversed for improper comments, even where there was instructions afterwards that what the burden of proof was, what the standard of proof was, that the jury was made aware of that after the comments were made.  And so for that reason, as well as the other three reasons in the brief, Your Honor, we're asking the Court to reverse and remand for a new trial. If there's no other questions,  Thank you. Thank you, Mr. Belmore.